**FILED**

OCT 2 8 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *ex. rel.*      :

NATIONAL WHISTLEBLOWER                    :
CENTER,
3238 P Street                             :
Washington, DC 20007                      :      Civil Action No:

Bringing this action on behalf of         :

THE UNITED STATES OF AMERICA c/o          :
                                                   CASE NUMBER   1:05CV02110
THE ATTORNEY GENERAL OF                   :
THE UNITED STATES                                  JUDGE: Royce C. Lamberth
10TH Street and Constitution Ave. NW      :
Washington, DC 20530                               DECK TYPE: General Civil
                                          :
                                                   DATE STAMP: 10/28/2005
AND                                       :

                                                   COMPLAINT AND JURY DEMAND
UNITED STATES ATTORNEY                    :
Judiciary Center Building                          COMPLAINT FILED UNDER SEAL PURSUANT
555 Fourth Street NW                      :        TO 31 U.S.C. 3730(b)(2)
Washington, DC, 20530                     :
                    PLAINTIFFS,
V.                                        :
 HALLIBURTON COMPANY;                     :
KELLOGG BROWN & ROOT, INC., an
Indirect  Wholly Owned Subsidiary of      :
HALLIBURTON; SERVICE
EMPLOYEES INTERNATIONAL, INC.,
a Foreign Corporation and an Indirect
Wholly Owned Subsidiary of
HALLIBURTON; KELLOGG, BROWN
& ROOT SERVICES, INC., a subsidiary of
KELLOGG BROWN & ROOT; DII
INDUSTRIES, LLC, the Parent Company
of KELLOGG BROWN & ROOT, INC.;
KELLOGG BROWN & ROOT
INTERNATONAL, INC., the Parent
Company of SERVICE EMPLOYEES
INTERNATIONAL, INC.; and,
OVERSEAS ADMINISTRATION
SERVICE,
                    DEFENDANTS.

## COMPLAINT

This is a *qui tam* action under 31 U.S.C. Sec. 3729, *et al.* of the False Claims Act filed by Relator/Plaintiff the National Whistleblower Center, in the name of the United States Government and itself to recover penalties and damages arising from Defendants' (Halliburton.*et. al.*) violations of federal requirements concerning contracts with agencies of the United States Defense Department.

## II. THE PARTIES INVOLVED

1.  Plaintiff, the National Whistleblower Center, of 3238 P Street, Washington, DC, is a private, non-profit organization incorporated under the laws of Washington, DC. dedicated to protect Whistleblowers and advance the rights of Whistleblowers.

2.  Defendant, Halliburton Company (Halliburton), is and was at all times relevant, the parent corporation of all Defendant corporations named herein and is a corporation or other business entity organized and existing under the laws of the State of Delaware.

3.  Defendant, Kellogg Brown & Root, Inc., (KBR) is an indirect wholly owned subsidiary of Halliburton and is believed to conduct its operations in Iraq and Kuwait through its division Brown & Root Services, incorporated in the State of Texas and maintains its principal place of business at 601 Jefferson Street, Houston, Texas 77002.

4.  Defendant Kellogg Brown & Root Services, Inc., (KBRSI) is a subsidiary of KBR.

5.  Defendant DII Industries, LLC (DII), is the parent company of KBR, and owns one hundred percent (100%) of Defendant KBR.  On information and belief DII is incorporated in the state of Texas.

6.  Defendant Service Employees International, Inc. (SEII) is a foreign corporation and on information and belief is incorporated in the Cayman Islands, a British territory, with its principal place of business at 4100 Clinton Drive, Houston, Texas 77020.  SEII is an indirect wholly owned subsidiary of Halliburton.

7.  Defendant Kellogg, Brown & Root International, Inc., (KBRI) is the parent corporation of Defendant SEII and owns one hundred percent (100%) of SEII.

8.  Overseas Administration Services (OAS) is a foreign subsidiary that does not operate in the United States whose corporate form is unknown.

## II.  JURISDICTION AND VENUE

9.  Plaintiff, hereby alleges causes of action under 31 U.S.C. sections 3729 *et. al.* of the False Claims Act, arising from Defendants' contracts with agencies of the United States Government Defense Department.

10.  Plaintiff, the National Whistleblower Center is the original source of all the allegations contained in this Complaint.

11.  There has been no public disclosure of the allegations contained in this complaint.

12.  Jurisdiction over all stated causes of action is conferred upon this Court by 31 U.S.C. Section 3732 and 28 U.S.C. Section 1331 in that this action arises under the laws of the United States.

13.  The Defendants are in the business of providing services and material to the U.S. Government through its Defense Agencies and conduct business in Washington, DC

14. Halliburton/KBR maintains offices at 1150 18th Street NW, Suite 200 Washington, DC 20036.

15. Presentments under the LOGCAP III contract were made to the United States Government.

16. Venue and jurisdiction are proper in the United States District Court, Washington, D.C. pursuant to 28 U.S.C. Section 1391(c) and 31 U.S.C. Section 3732 as the Defendants are a group of organizations and persons subject to personal jurisdiction in Washington, DC.

## III.    FACTUAL BACKGROUND

17. The Logistics Civil Augmentation Program, known generally as "LOGCAP", originated when, because of shrinking budgets and limited logistical capability, Army planners concluded that contractors were necessary to fill the gaps in the United States military logistical support plan.

18. LOGCAP involves a combination of advanced acquisition and logistics planning to provide for the use of civilian contractors during wartime and unforeseen military emergencies in order to supplement the Army's logistic and service support capability.

19. LOGCAP permits the military to plan for future crises and to make use of extensive civilian resources overseas. This umbrella contract allows the Army to immediately contract for support and services.

20. The Mission statement contained within the LOGCAP contract is that LOGCAP Services will be used throughout the United Central Command Area of Operation (CENTCOM) to augment and support U.S. Forces.

21.   Its area of jurisdiction is in the Middle East, East Africa and Central Asia. Initial
      LOGCAP tasks are defined broadly, with requirements and specifications added and
      modified as warranted.

22.   In December 2001, Brown & Root Services (BRS), a division of Kellogg, Brown & Root,
      Inc. (KBR), entered into a LOGCAP contract with the United States Army Material
      Command under U.S. Contract DAAA09-02-D0007.

23.   Because this is the third in a series of LOGCAP contracts, it is commonly referred to as
      LOGCAP III (hereinafter "the Contract")

24.   The nature of the Contract is such that the contractors are to serve in non-combat support
      roles for the United States Army.

25.   Under the Contract, KBR provides life support and other services to the United States
      Army during contingency operations.  KBR is an indirect wholly owned subsidiary of
      Halliburton Company (Halliburton).

26.   In 2003, KBR transferred the Contract to one of its subsidiaries, Kellogg, Brown & Root
      Services, Inc. (KBRSI), pursuant to a novation whereby its performance was guaranteed
      by Halliburton.

27.   KBR is authorized to perform work under the Contract as follows:   A Procuring
      Contracting Officer of the United States Army Field Support Command issues a Task
      Order based upon the terms and conditions established in the Statement of Works (SOW)
      pursuant to the Contract, that is initiated by either a formal letter called a Notice to
      Proceed, which may be for the full SOW or limited, or a Task Order Award.  Both
      documents provide a start date and serve as the authorization to begin work designated in
      the Task Order SOW.

28.     The Code of Federal Regulations, Title 48 Federal Acquisition Regulation, Chapter 1,

        Part 52 – Solicitation Provisions and Contract Clauses, provides the various available

        clauses to be inserted into a government contract.

29.     The references to these clauses have the same force and effect as if set forth in their

        entirety into the Contract. The applicable contract clauses in the Contract are set each

        forth within Part II Section I of the Contract.  Likewise, clauses identified in Part 52 that

        are not set forth in the Contract do not apply.

30.     The specifics of the services the contractor will provide for any given event, in any given

        location are determined by individual Task Orders which specifically define the contract

        requirements for the particular event and location.

31.     For example, Task Order 0043 defines contract requirements for Kuwait and Task Order

        0059 defines contract requirements for Iraq.

32.     One of the applicable clauses identified in the Contract states as follows:

        Contract Work Hours and Safety Standards Act – Overtime Compensation/
        Overtime requirements.  No Contractor or subcontractor employing laborers or
        mechanics shall require or permit them to work over 40 hours in any workweek
        unless they are paid at least 1 and ½ times the basic rate of pay for each hour
        worked over 40 hours.

48 C.F.R. 52.222-4(a).

33.     Section 52.222.-4(b) goes on to identify the ramifications for violation of the clause to

        pay overtime:

        (b) Violation; liability for unpaid wages; liquidated damages.  The responsible
        Contractor and subcontractor are liable for unpaid wages if they violate the terms
        in paragraph (a) of this clause. In addition, the Contractor and subcontractor are
        liable for liquidated damages payable to the Government.  The Contracting
        Officer will assess liquidated damages at the rate of $10 per affected employee for
        each calendar day on which the employer required or permitted the employee to

work in excess of the standard workweek of 40 hours without paying overtime wages required by the Contract Work Hours and Safety Standards Act.

34.   The overtime compensation articulated in the Contract Work Hours and Safety Standards Act as stated is required.  The clause contains "shall", which is defined as "imperative" (48 C.F.R. 2.101) and states as follows:

(e) Subcontracts.   The Contractor <u>shall</u> insert the provisions set forth in paragraphs (a) through (d) of this clause in subcontracts exceeding $100,000 and require subcontractors to include these provisions in any such lower tier subcontracts.   The Contractor <u>shall</u> be responsible for compliance by any subcontractor or lower-tier subcontractor with the provisions set forth in paragraphs (a) through (d) of this clause.

52.222-4(e) (emphasis added).

35.   According to this clause incorporated into the Contract, all "subcontracts" resulting from the umbrella Contract that are drafted by a "lower tier" subcontractor are required to contain the clause directing that overtime of time and ½ times base pay must be  paid for all hours worked over 40 hours a week.

36.   The Task Orders may in some cases exclude certain clauses in the Contract if the clauses do not apply to that particular Task Order.

37.   For example, Task Order 0043 and Task Order 0059, however, did eliminate three clauses (and only three) contained in the LOGCAPIII Contract.  However, the clause requiring overtime pay of time and a half for all workers under the Contract who worked over 40 hours a week was not eliminated in the Task Orders and thus remains a requirement of the Contract entered into between Defendants and the United States government.

38.    Defendants and its subcontractors presented its employees with an Employment Agreement (Agreement) for employment in support of the U.S. Army's Area of Operation under the Contract.

39.    All the provisions in the agreement regarding general terms and conditions, compensation calculations of base pay, holidays, leave, hazard pay, security matters, and employee standards of conduct were the same.

40.    The Agreement between one employee and another only materially varied in terms of base salary and job classification. The Agreement set forth the employees' base salary and a formula used to calculate the hourly rate for straight time pay.

41.    The Agreement, in direct violation of the terms of the Contract, states: "All hours worked over 40 hours per week will be paid at the straight time rate." LOGCAP SEII Employment Agreement, "Specific Terms and Conditions" (The Agreement allowed for a five percent (5%) Foreign Service Bonus; twenty five percent (25%) Work Area Differential Bonus; and a twenty five percent (25%) Hazard/Danger Pay Bonus (also collectively called "Uplift pay") to apply only to the first forty (40) hours worked each week. The Uplift multiplier was not attributed to overtime. For the contractors in Iraq and Kuwait the Uplift Pay translated into an additional fifty five percent (55%) multiplier of base pay).

42.    Defendants failed to pay workers it hired through subcontracts for time worked over 40 hours per week.

43.    Many of the workers hired through such subcontracts worked a great deal of overtime.

44.    A review of pay stubs reveals that these employees were consistently working almost twice the number of regular hours in a week, resulting in pay stub reports showing at least 300 hours and many times over 400 hours worked in a 4 week period.

45.    Workers were also worked long, grueling hours doing very dangerous work under very difficult conditions.

46.    Hours reflected on employee pay stubs are less than hours on completed time sheets.

47.    Defendants failed to pay required overtime.

48.    In addition to their non-compliance with the Contract in not paying overtime to its employees in Iraq and Kuwait, the Defendants miscalculated the amount of pay owed to the workers.

49.    Defendants incorrectly calculated its employees' pay in accordance with the Agreement.

50.    The employees' pay stubs indicate frequent problems with these calculations, resulting in underpayments.

51.    The Contract Defendants entered into with the Government requires that the Defendants pay the employees subject to the Contract time and ½ for all hours worked over 40 hours per week.

52.    On information and belief the workers who were not paid overtime include current and former employees of Defendants pursuant to the Contract, Task Orders 0043 and 0059 from March, 2003 to the present.

53.    There are approximately twenty to forty thousand present and formerly employed employees who have not been paid overtime in contradiction of the LOGCAP III contract with the United States.  The exact number of employees covered under the LOGCAP III contact is subject to proof at trial.

54.    The United States Government sustained damages arising out of defendants' failure to pay time and a half overtime pay for time worked beyond a forty hour work week and failure to properly calculate employee compensation.

55.    In addition, the United States was, on information and belief, charged for such overtime payments.

## VIOLATIONS UNDER THE FALSE CLAIMS ACT

## COUNT I

56.    Plaintiff re-alleges and reasserts the preceding paragraphs as if fully set forth herein.

57.    The defendants knowingly, willfully and recklessly entered into subcontracts under their authority as the prime contractor for the United States, which expressly forbid the subcontractors from paying workers overtime.

58.    Such a provision against paying overtime is in direct violation of the contract between the United States and the defendants.

59.    The defendants did not in fact pay overtime.

60.    The defendants systematically underpaid employees and employees of subcontractors.

61.    On information and belief, time cards were presented to the United States and to the Prime Contractor showing that employees worked extensive amounts of overtime for which they were not paid.

62.    Payment of workers for the amount of time they earned including overtime was a material condition of the contract between the United States and the defendants.

63.    On information and belief the United States was charged for overtime payments which were not paid to workers.

64.    The United States has been damaged to the extent of any payments made to the defendants under the LOGCAP III Contract for overtime which while charged to the government, was not paid to workers.

## COUNT II

65.    Plaintiff re-alleges and reasserts the preceding paragraphs as if fully set forth herein.

66.    The defendants knowingly, willfully and recklessly entered into subcontracts under their authority as the prime contractor for the United States, which expressly forbid the subcontractors from charging overtime.

67.    Such a provision against paying overtime is in direct violation of the LOGCAP III contract between the United States and the defendants.

68.    The defendants knowingly, recklessly and willfully did not pay and prevented payment of overtime earned by employees covered under the LOGCAP III contract.

69.    A contract provision of the LOGCAP III contract, cited above, expressly provides for additional liquidated damages to the government separate from any unpaid wages in the amount of $10 per day for any day a worker would have earned but did not receive payment for overtime.

70.    The United States Government's damages include but are not limited to the liquidated damages equal to ten dollars per day per person entitled to unpaid overtime or who was otherwise subjected to wage underpayments.  The extent of said liquidated damages, based on the number of workers and the number of days worked, is estimated to be one hundred million dollars ($100,000,000), the exact number to be proven at trial.

## COUNT III

71.    Plaintiff re-alleges and reasserts the preceding paragraphs as if fully set forth herein.

72.    The governing contract clause concerning the compensation for overtime work requires that no employee of defendants nor its subcontractors shall work over 40 hours in any work week unless they are paid at least 1 and ½ times the basic rate of pay for each hour worked over 40 hours.

73.    Defendants knowingly, willfully and recklessly entered into subcontracts for services which expressly forbid subcontractors to pay overtime in violation of LOGCAP III provisions.

74.    Defendants then charged the United States under the LOGCAP III contract for expenses and overtime costs related to those subcontracts.

75.    The subcontracts which were issued by the defendants were in express violation of defendants contracts with the United States and any charges for such contracts would be fraudulent.

76.    Therefore, the United States has been damaged to the full amount of any subcontract issued by the defendants which expressly forbids overtime payment by the defendants to the subcontractors as such a contract is in express violation of LOGCAP III.

## COUNT IV

77.    Plaintiff re-alleges and reasserts the preceding paragraphs as if fully set forth herein.

78.    The defendants knowingly, willfully and recklessly entered into subcontracts under their authority as the prime contractor for the United States, which expressly forbid the subcontractors from paying workers overtime.

79.    Such a provision against paying overtime is in direct violation of the contract between the United States and the defendants.

80.    The defendants did not, in fact, pay overtime as required under the LOGCAP III contract.

81.    The defendants also systematically underpaid employees and employees of subcontractors.

82.    On information and belief, time cards were presented to the United States and to the Prime Contractors demonstrating that overtime was in fact earned.

83.    Payment of workers for the amount of time they earned including overtime was a material condition of the contract between the United States and the defendants.

84.    The United States was defrauded as a result of the defendants' violation of the material terms and conditions of the LOGCAP III contract.

85.    Therefore, the United States was damaged for the full value of any payments made to the defendants under the LOGCAP III Contract.

## PRAYER FOR RELIEF

Wherefore, the National Whistleblower Center on behalf itself and the United States Government prays:

a)    That this Court enter a judgment against defendants in an amount equal to three times the amount of damages the United States Government has sustained as a result of defendants' entering into subcontract terms that express violate material terms and conditions of the LOGCAP III contract, which would include any charges paid to the defendants under the LOGCAP III contract that expressly forbid overtime to be paid to workers.

b)    That this Court enter a judgment against defendants in an amount equal to three times the amount paid to the defendants for charges under the Contract when the defendants

did not pay and/or prevented subcontractors from paying overtime in express violation of a material condition of the LOGCAP III Contract with the United States.

c)    That this Court enter a judgment against defendants in an amount equal to three times the amount paid to the defendants for overtime charges the defendants made to the government under the Contract when the defendants did not pay and or prevented subcontractors from paying overtime to workers.

d)    That this Court enter a judgment against defendants in an amount equal to three times the amount of the liquidated damages owed to the United States government as a result of the defendants non-payment of overtime and underpaying wages as a result the willful, reckless and knowing acts of the defendants that prevented payment for overtime and otherwise underpaid workers.

e)    That the defendants also pay a civil penalty of up to $10,000 for each violation of 31 U. S.C. section 3729, which includes each and every day an employee was entitled to overtime, but was not paid such overtime, plus each and every instance the United States was charged for overtime that was not paid to a worker, plus each and every instance of a contract or invoice was issued by the defendants as prime contractor or funds were received from the Government under a contract that forbids the payment of overtime in violation of LOGCAP III;

g)    That the Relator be awarded all costs incurred including reasonable attorney's fees;

h)    That in the event the United States Government continues to proceed with this action, the Relator be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the actions or the settlement of the claim;

i)      That in the event that the United States Government does not proceed with this

action, the Relator be awarded an amount that the Court decides is reasonable for

collecting the civil penalty and damages, which shall be not less than 25% nor more

than 30% of the proceeds of the action or settlement;

j)      That the Relator be awarded pre-judgment and post-judgment interest;

k)      That a trial by jury be held on all issues;

l)      That the United States Government and the Relator receive all relief both at law and

at equity, to which they may reasonably appear to be entitled.

### JURY TRIAL DEMANDED

Respectfully Submitted,

Michael D Kohn
DC Bar # 425617
Kohn, Kohn, Colapinto, LLP
3233 P Street N.W.
Washington D.C. 20007
(202)-342-6980
(202)-342-6984 (fax)
Attorneys for
The National Whistleblower Center

October, 28, 2005